UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL T. WILLIAMS,<br><br>                Plaintiff,<br>v.<br><br>MICHAEL MINEV, et al.,<br><br>                Defendants. | Case No. 3:22-cv-00293-RCJ-CSD<br><br>SCREENING ORDER |

Plaintiff Michael Williams, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and filed an application to proceed *in forma pauperis*. (ECF Nos. 1-1, 1). The matter of the filing fee will be temporarily deferred. The Court now screens Williams's civil-rights complaint under 28 U.S.C. § 1915A.

**I.      SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

In his Complaint, Williams sues six Defendants for events that took place while he was incarcerated at Lovelock Correctional Center ("LCC"). (ECF No. 1-1 at 1–5). Williams sues Defendants Michael Minev, R. Donnelly, B. Egerton, A. Mejia, Renee Baker, and A.W. Sandy. (*Id.* at 2–5).[1] Williams brings two claims and seeks declaratory, monetary, and injunctive relief. (*Id.* at 3–14).[2]

### A.    Factual allegations[3]

Williams alleges the following. When Williams was housed at LCC, he was assigned a top bunk. (*Id.* at 5). There were no rails on the bed to prevent Williams from falling, nor were there ladders to assist Williams in reaching his bunk. (*Id.*) Williams had to climb unaided about six to ten feet to reach his bed. (*Id.*) Williams's cell was brick and mortar and included living and storage space for both prisoners and a combination toilet and sink that was constructed out of stainless steel. (*Id.*)

During the time Williams was assigned a top bunk, he was prescribed medications that had a sedative effect, caused dizziness, and induced sleep. (*Id.* at 6). Williams was

---

[1] Williams alleges that LCC is liable and being sued for failing to install rails and ladders on the beds. (ECF No. 1-1 at 9). Williams cannot sue LCC because it is a building, not an individual or entity that is subject to suit under 28 U.S.C. § 1983.
[2] Prisoner William Berry, #23739 prepared or helped prepare the Complaint. (ECF No. 1-1 at 14)
[3] The Court uses any job position or title that Williams ascribes to the Defendants. This should not be construed as a finding about the truthfulness of those allegations.

required to take his medications before bed each night. (*Id.*) This meant that Williams had to maneuver the climb unaided into his bunk while under the effects of his medication. (*Id.*) Williams filed a medical request on June 13, 2018, seeking a lower bunk and to have his medications lowered because he was having panic attacks. (*Id.*) Mejia "deferred and/or refused [Williams's] request for a lower bunk." (*Id.* at 7).

Williams filed an informal grievance on March 15, 2020, complaining that he fell out of his bed, injured his back and hip, and was in extreme pain. (*Id.*) Williams sought a lower bunk. (*Id.*) Egerton denied Williams's grievance. (*Id.*) Williams filed a first-level grievance about the issue and sought a lower bunk. (*Id.*) Donnelly denied the grievance. (*Id.*) Williams filed a second-level grievance about this issue on August 1, 2020, and sought a lower bunk. (*Id.* at 8). Minev denied the grievance. (*Id.*) None of these grievance responders addressed Williams's injuries or pain from the fall. (*Id.*) Baker and Sandy "failed to protect [Williams's] rights when they had a duty to do so." (*Id.*)

Based on these allegations, Williams alleges that Defendants were deliberately indifferent to his serious medical needs and negligent in violation of state law. The Court liberally construes the Complaint as alleging claims based on those two different theories of liability: (1) Eighth Amendment deliberate indifference to serious medical needs, and (2) state-law negligence. The Court addresses each theory below.

  **B.**  **Eighth Amendment—deliberate medical indifference**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082–83 (9th Cir. 2014).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Based on the allegations, Williams has medical conditions and takes medications to treat them. The medications make Williams dizzy and sleepy. Williams must take his medications in the evening. Williams was assigned a top-bunk bed at LCC. There are no rails around or ladders going to the top-bunk beds at LCC. As a result, Williams was required to get into his bed unaided and while on medications that made him physically unstable.

Williams sent a kite to medical asking for a lower bunk and to have his medications reduced because they're giving him panic attacks. Mejia "deferred and/or refused" Williams's request for a lower bunk. Two years later, Williams filed a grievance that he fell off his top-bunk bed, injured his back and hip, and was in extreme pain. Williams also stated he had asked medical and mental-health providers to assign him a bottom-bunk bed. Egerton, Donnelly, and Minev all denied Williams's grievance without addressing his injuries and pain.

The Court finds that the allegations are enough for screening purposes to state a colorable claim that Williams had a serious need for a lower-bunk assignment and medical attention for the injury and pain associated with his fall. Williams sufficiently alleges that Egerton, Donnelly, and Minev were deliberately indifferent to his injury and pain needs, and Mejia was indifferent to his need for a lower bunk. But the allegations are not enough to show that either Baker or Sandy was aware of his medical needs, let alone ignored them or interfered with his treatment. The Eighth Amendment claim for deliberate medical indifference can therefore proceed against only Defendants Mejia, Egerton, Donnelly, and Minev.

### C. Williams cannot pursue his tort claims in federal court.

The State of Nevada has generally waived sovereign immunity for state tort actions in state court. Nev. Rev. Stat. § 41.031(1). To sue the State of Nevada or a state employee, the plaintiff must sue the State of Nevada or appropriate political subdivision. Nev. Rev. Stat. §§ 41.031, 41.0337. "In any action against the State of Nevada, the action must be brought in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit." *Id.* § 41.031(2).

In *Craig v. Donnelly*, 439 P.3d 413 (Nev. App. 2019), the Nevada Court of Appeals held that "while a plaintiff must name the State as a party to any state tort claims in order to comply with NRS 41.031 and NRS 41.0337, this statutory requirement does not apply to 42 U.S.C. § 1983 claims, even when brought in the same complaint as a plaintiff's state tort claims. Indeed, the State cannot be named as a party to a plaintiff's § 1983 civil rights claims." *Id.* at 414. In *Craig*, the Nevada Court of Appeals addressed whether a plaintiff had to name the State as a party in a *state* court case. *Id.* at 413.

With respect to *federal* court cases like this one, the State of Nevada does not waive its immunity from suit conferred by the Eleventh Amendment. Nev. Rev. Stat. § 41.031(3). Generally, this means the State of Nevada and arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982)

6

(holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states"). In *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, (9th Cir. 2006), the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state-law claims. *Id.* at 1133-34. Although the State of Nevada may consent to federal court jurisdiction for state-law claims through removal, this is not a removed case. *See Lapides v. Bd. of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002) (holding that state's removal of suit to federal court constitutes waiver of its sovereign immunity).

Williams brings claims under Nevada law for negligence and negligent infliction of emotional distress against Defendants who are alleged to be employees of the State of Nevada or the NDOC, which is an arm of the State. Nevada law requires Williams to sue the State of Nevada or the NDOC to bring his state-law tort claims. But Williams cannot sue the State of Nevada or the NDOC in this federal action because the State of Nevada has not waived its sovereign immunity, and this is not a removed action. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities indispensable parties in a state-tort claim against a county employee, the federal court had no supplemental jurisdiction over the state-tort claim if it had no jurisdiction over the indispensable party). Williams's negligence and negligent-infliction-of-emotional-distress claims are therefore dismissed with prejudice because amendment in federal court would be futile.

### III.   CONCLUSION

It is therefore ordered a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Eighth Amendment claim for deliberate medical indifference can proceed against only Defendants A. Mejia, B. Egerton, R. Donnelly, and Michael Minev.

It is further ordered that the state-law claims for negligence and negligent infliction of emotional distress are dismissed with prejudice because amendment in federal court would be futile.

It is further ordered that Defendants Renee Baker and A.W. Sandy are dismissed without prejudice from the Complaint.

It is further ordered that, given the nature of the claim that the Court has permitted to proceed, this action is stayed for 90 days to allow Williams and Defendants an opportunity to settle their dispute before the $350 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Williams's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

Williams is cautioned that if this case does not settle, he will be required to pay the full $350 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Williams's application to proceed *in forma pauperis*. If Williams is allowed to proceed *in forma pauperis*, the fee will be paid in

installments from his prison trust account. See 28 U.S.C. § 1915(b). If Williams is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Williams needs an interpreter to participate in the mediation program, Williams will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the Interested Party identified below for the purpose of participating in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

The Clerk of the Court is directed to:

- File the Complaint (ECF No. 1-1);
- Send Plaintiff Williams a courtesy copy of the Complaint;
- Add the Nevada Department of Corrections to the docket as an Interested Party; and
- Electronically serve a copy of this order and a copy of the Complaint on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the Interested Party on the docket. This does not indicate acceptance of service.

DATED THIS 31st day of August 2022.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL T. WILLIAMS,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br>MICHAEL MINEV, et al.,<br><br>　　　　　　　　　Defendants. | Case No. 3:22-cv-00293-RCJ-CSD<br><br>REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

　　____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

　　____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

　　____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a*

*contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____   _____
                              Print                                      Signature

Address: _____   Phone:

                                                    _____

_____   Email: _____