**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL T. WILLIAMS,<br><br>    Plaintiff<br><br>v.<br><br>MICHAEL MINEV, et al.,<br><br>    Defendants | Case No.: 3:22-cv-00293-RCJ-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 49 |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 49, 49-1 to 49-20, 51-1 to 51-8, 55-1.) Despite being given additional time, Plaintiff did not file a response. (*See* ECF No. 56.)

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC).

The court screened Plaintiff's complaint and allowed him to proceed with Eighth Amendment claims against defendants Dr. Michael Minev, Donnelly, Egerton, and Mejia. (ECF No. 3.)

Plaintiff alleges that when he was housed at LCC, he was assigned a top bunk. There were no rails on the bed to prevent him from falling, nor were there ladders to assist him in reaching his bunk. During this time, he was prescribed medications that had a sedative effect, caused dizziness, and induced sleep. He was required to take these medications before bed each night. He filed a medical request on June 13, 2018, seeking a lower bunk. He claims that Mejia deferred and/or refused his request for a lower bunk. Then, he filed an informal grievance on March 15, 2020, claiming that he fell out of his bed, injured his back and hip, and was in extreme pain, and sought a lower bunk. He avers that Egerton denied his grievance. He filed a first level grievance and again sought a lower bunk, and Donnelly denied the grievance. Then, he filed a second level grievance seeking a lower bunk, and Dr. Minev denied his grievance. He claims that none of the grievances addressed his injuries or pain from the fall.

The court interpreted his complaint as alleging that Egerton, Donnelly, and Dr. Minev were deliberately indifferent to his injury and pain needs, and Mejia was indifferent to his need for a lower bunk. (ECF No. 3 at 6.)

Donnelly and Mejia were dismissed without prejudice for lack of timely service under Federal Rule of Civil Procedure 4(m). (ECF No. 44.) Therefore, this action is only proceeding against Egerton and Dr. Minev.

Egerton and Dr. Minev move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies as to his claim that the Defendants failed to address his injury and pain needs; and (2) even if he did exhaust, they did not violate his Eighth Amendment rights.

///

///

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

Case 3:22-cv-00293-RCJ-CSD   Document 58   Filed 11/01/23   Page 5 of 10

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted). Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).

NDOC's Administrative Regulation (AR) 740 governs the inmate grievance process utilized to exhaust administrative remedies. An inmate must complete three grievance levels to exhaust administrative remedies: informal, first and second levels. (ECF No. 49-17.)

Plaintiff filed one grievance that can be construed as related to this issue: grievance 20063098625. (ECF Nos. 49-15, 49-16.) In his informal level grievance filed on March 15, 2020, he noted that he fell from his top bunk on March 11, 2020, injuring his back and hip which left him in extreme pain. He indicated he had spoken with medical and made attempts to communicate with mental health to try to get a bottom bunk restriction in June 2018 and October 2019, because his psychiatric medications cause dizziness. He claimed that he injured himself due to the failure to give him a bottom bunk restriction. He went on to state: "I'm asking that N.D.O.C. and relevant officials provide me with a bottom bunk restriction, and treat me appropriately for the injuries I've sustained." He further requested that NDOC consider installing ladders to assist inmates assigned to top bunks. (ECF No. 49-15 at 9-11.)

B. Egerton denied the informal level grievance, stating: "I have reviewed your medical file. Nurses are not authorized to change an inmates medical classification. This can only be done by a doctor. We currently do not have a doctor at LCC. If you would like to discuss this with one of the doctors in Carson City please submit a kite requesting an appointment. Grievance denied." (ECF No. 49-15 at 8.)

Plaintiff submitted a first level grievance on April 29, 2020. He alleges it was unconstitutional to not have adequate medical doctors at a prison facility, and this endangers the lives of inmates housed at LCC. He asked that ladders be installed on the bunk beds for safety and security purposes. He also requested bottom bunk restrictions and $100,000 for injuries he sustained falling from the bunk. (ECF No. 49-15 at 6-7.)

1    R. Donnelly, who has been dismissed without prejudice, responded to the first level
2 grievance: "This is a First Level Grievance in which Mr. Williams reports the Doxepin 200mg
3 that he takes at night puts him in danger of falling and that he needs a bottom bunk. The concern
4 will be forwarded to the ordering Psychiatrist for consideration. Grievance denied." (ECF No.
5 49-15 at 12.)
6    Plaintiff submitted a second level grievance on August 1, 2020, stating that he was
7 subject to an extreme risk of injury because he was taking medication that caused dizziness and
8 he fell off of the top bunk even after he had requested a bottom bunk restriction many times.
9 (ECF No. 49-15 at 4-5.)
10    Dr. Minev responded to Plaintiff's second level grievance finding Plaintiff was answered
11 appropriately at the lower levels: "In your Medical file it shows that you were classed for a lower
12 bunk on 4-2-2020. You first submitted the Informal Grievance on 4-27-2020. If you do not have
13 a lower bunk, check with your caseworker to look into your classification status. Grievance
14 resolved." (ECF No. 49-15 at 3.)
15    A grievance is sufficient "if it alerts the prison to the nature of the wrong for which
16 redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v.
17 Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology
18 or legal theories" as its "primary purpose ... is to alert the prison to a problem and facilitate its
19 resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.
20    The court agrees with Defendants that Plaintiff's grievance was focused on the bottom
21 bunk restriction and getting compensated for the injuries suffered as a result of his fall. While he
22 included a brief statement in his informal grievance about being treated appropriately for his
23 injuries, the rest of that grievance focused on the bottom bunk restriction and did not state he had

not received treatment or that any treatment received was inadequate. The first and second level grievances were similarly focused on the bottom bunk restriction. Thus, the grievance did not put Egerton or Dr. Minev on notice of his claim for deliberate indifference to his pain and injuries as a result of his fall.

**B. Eighth Amendment**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). Deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297

F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted).

At the time Plaintiff made the statement about the treatment in the informal level grievance on March 15, 2020, it had only been several days since his fall on March 11, 2020. The evidence submitted by Defendants demonstrates that Plaintiff was treated shortly after the alleged fall. He complained of pain to his right hip due. He had guarded range of motion, and some pain to palpation to the lower back on the right and the right hip, but no bruising was noted. He was given an ibuprofen pain pack and was instructed to follow up as needed. (ECF No. 51-2 at 4.) He was seen again on March 17, 2020, and complained that he could not get up. An x-ray of the lower back and right hip were ordered. (ECF No. 51-2 at 3, 10.) He was prescribed Baclofen and ibuprofen during the relevant time period. (ECF No. 51-8.) For whatever reason, the x-rays of his lumbar spine and hip were not performed until roughly a year after the incident. (ECF No. 51-6 at 2-4.) They showed no fracture or significant degenerative changes, but mild degenerative changes in the lumbar spine, and an unremarkable hip x-ray. (*Id.*)

Even if the grievance did adequately put them on notice of this issue, the court also finds these two Defendants were not deliberately indifferent to Plaintiff's medical needs. Neither was involved in Plaintiff's medical care or treatment. Neither saw him for his complaints of pain from his fall. Neither was the provider that ordered the x-rays. Nor is there any evidence that the delay in getting the x-rays can be attributed to them. Responding to a medical grievance can subject a defendant to liability under certain circumstances. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (NDOC medical director personally denied a grievance despite being aware the optometrist had recommended cataract surgery such that a jury could find that the

medical director contributed to the decision to refuse treatment). In this case, however, there is no evidence that Plaintiff provided these two Defendants with *any* information regarding a lack of adequate care to address his pain and injuries from the fall. Finally, Plaintiff does not dispute that he was given a lower bunk restriction weeks after his alleged fall.

For these reasons, summary judgment should be granted in favor of Egerton and Dr. Minev.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 49) and entering judgment in favor of Defendants Egerton and Dr. Minev. The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: November 1, 2023

Craig S. Denney
United States Magistrate Judge